# UNITED STATES *v.* LOUISIANA ET AL. (ALABAMA AND MISSISSIPPI BOUNDARY CASE)

No. 9, Orig.   Argued January 11, 1988—Decided March 1, 1988

BLACKMUN, J., delivered the opinion of the Court, in which all other Members joined, except MARSHALL and KENNEDY, JJ., who took no part in the consideration or decision of the case.

*Jim R. Bruce,* Special Assistant Attorney General, argued the cause for defendant State of Mississippi. With him on the brief was *Edwin Lloyd Pittman,* Attorney General.

*Jeffrey P. Minear* argued the cause for the United States. On the brief were *Solicitor General Fried, Acting Assistant Attorney General Marzulla, Deputy Solicitor General Wallace,* and *Donald A. Carr.*\*

JUSTICE BLACKMUN delivered the opinion of the Court.

In the Court's most recent opinion in this extended litigation, see 470 U. S. 93 (1985), Mississippi Sound was determined to be a historic bay under the Convention on the Territorial Sea and the Contiguous Zone, [1964] 15 U. S. T. (pt. 2) 1607, T. I. A. S. No. 5639. The waters of that Sound, therefore, are inland waters, and Alabama and Mississippi own their respective portions of the bed of Mississippi Sound. The Court, as is customary in cases of this kind, stated:

> "The parties are directed promptly to submit to the Special Master a proposed appropriate decree for this Court's consideration; if the parties are unable to agree upon the form of the decree, each shall submit its proposal to the Master for his consideration and recommendation." 470 U. S., at 115.

*\*Grace Berg Schaible,* Attorney General, *G. Thomas Koester,* Assistant Attorney General, and *John Briscoe* filed a brief for the State of Alaska as *amicus curiae.*

Jurisdiction was retained to entertain such further proceedings as might be determined to be necessary or advisable to effectuate and supplement the decree and to determine the rights of the parties. *Ibid.*

The Supplemental Report dated March 16, 1987, of the Special Master, the Honorable Walter P. Armstrong, Jr., now has been filed and is before us. The Master notes therein, p. 2, that no disagreement remains among the parties with respect to the coastline and seaward boundary of Alabama. That much has been decided and is clear. The Master further notes, however, *id.*, at 3, that Mississippi and the United States are in disagreement as to the "seaward boundary" of Mississippi "at two points." Attached to the Report, as exhibits, are forms of a supplemental decree proposed respectively by the United States and by Mississippi. *Id.*, at 31 and 38. The Special Master ends his Report with conclusions and recommendations. *Id.*, at 26. Mississippi has noted exceptions. The United States is in opposition to those exceptions. Alabama at this point, of course, stands mute. Briefs have been filed and oral argument has been presented.

The Special Master concluded (a) that the decree proposed by Mississippi should *not* be entered, *ibid.*, and (b) that, while "the line proposed by the United States," would be "a preferable solution," it "would amount to a modification of the Court's opinion of February 26, 1985," because it "would be beyond the scope of the reference" to the Master. *Id.*, at 27. He has recommended that the Court "enter an order directing the parties to prepare and submit to the Special Master a decree" defining the seaward boundaries of Alabama and Mississippi "to the extent agreed upon"; defining Mississippi's seaward boundary between Petit Bois Island and Horn Island "as proposed in the decree submitted by the United States"; and, despite his expressed reservation noted above, defining the portion of Mississippi's seaward boundary from West Ship Island westward as a described line inter-

secting at its westernmost point with the already-determined Louisiana border.* *Ibid.*

I

The specific proceeding that culminated in this Court's opinion of February 26, 1985, reported at 470 U. S. 93, concerned, we thought, only Mississippi Sound and its boundary. See *id.*, at 94; Tr. of Oral Arg. 3. The Special Master's Report and his stated reservation as to the scope of the reference to him also appear to reflect that understanding. But in its argument to the Master and in its present exceptions, Mississippi seeks to extend the scope of this litigation to include its interest in seabed south of Mississippi Sound. The State's current arguments bear little relation to earlier proceedings unless one engrafts upon our 1985 opinion, and upon our direction therein for a proposed decree fixing the southern boundary of Mississippi *Sound*, an implication that Mississippi's rights, if any, *south* of that Sound's boundary are to be definitively determined in this phase of the litigation.

To the south of the western part of Mississippi Sound lies Chandeleur Sound, a body of water east of Louisiana's mainland and west of the offshore Chandeleur Islands that run north and south. Chandeleur Sound and Mississippi Sound generally lie perpendicular to each other. They are separated by Cat Island, West Ship Island, and East Ship Island. The latter two at one time formed a single island but became divided by hurricane action some years ago.

An earlier phase of this litigation led to the entry of a supplemental decree issued June 16, 1975, see *United States* v. *Louisiana (Louisiana Boundary Case)*, 422 U. S. 13, fixing the coastline (baseline) of Louisiana pursuant to the Court's decision of March 17, 1975, see 420 U. S. 529. Embodied in that decree is a line then stipulated to by the United States and the State of Louisiana delimiting Louisiana's interest in

---

*We necessarily assume that, by his repeated use of the term "seaward boundary," the Master is referring to Mississippi's coastline and not to its ultimate offshore boundary.

Chandeleur Sound north of the Chandeleur Islands. The Solicitor General advises us that the United States, in this litigation with Mississippi, offered to recognize Mississippi's rights "in the vicinity of Chandeleur Sound on the basis of an extension of the line stipulated" in the litigation between the United States and Louisiana (a line running from the location at that time of the northernmost of the Chandeleur Islands to a point near the middle of West Ship Island), but that Mississippi rejected that offer. Brief for United States 2–3. Mississippi acknowledges the rejection. Tr. of Oral Arg. 6. Thus, that easy solution to the controversy between the United States and Mississippi as to waters south of Mississippi Sound and in the vicinity of Chandeleur Sound proved to be unattainable. What remains in dispute is an area of about 150 square miles. *Id.*, at 16.

## II

As has been stated above, the current phase of the litigation up to this point, so far as Mississippi is concerned, has dealt only with Mississippi Sound. It has not focused on Mississippi's interest south of Mississippi Sound. This being so, we sympathize with the Special Master's unease about the scope of the reference to him. With the case in its present somewhat confused posture, we are unwilling on the present record to determine the extent of Mississippi's rights south of Mississippi Sound without the parties' complete agreement and the Special Master's ready acquiescence.

Because Mississippi's exceptions to the Special Master's Supplemental Report do not relate at all to Mississippi Sound, and do not contest the validity of that Sound's closing lines recommended by the Master, we are left with a situation where all parties are in agreement as to that Sound and its boundary. The exceptions of Mississippi, as presented to us at this time, therefore are overruled but without prejudice to the advancement of such claims as any party might have with respect to the area south of Mississippi Sound and in the

vicinity of Chandeleur Sound in an appropriate separate chapter of these proceedings. The Supplemental Report dated March 16, 1987, of the Special Master and his recommendations, to the extent—and only to the extent—they are consistent with this opinion, are adopted and confirmed.

The parties once again are directed promptly to submit to the Special Master a proposed appropriate decree for this Court's consideration defining the claims of Alabama and Mississippi with respect to Mississippi Sound. If the parties are unable to agree upon the form of the decree, each shall submit its proposal to the Special Master for his consideration and recommendation. Each party shall bear its own costs; the actual expenses of the Special Master incurred with respect to this litigation since February 26, 1985, shall be borne half by the United States and half by Mississippi.

The Court retains jurisdiction to entertain such further proceedings, enter such orders, and issue such writs as from time to time may be determined to be necessary or advisable to effectuate and supplement the forthcoming decree and to determine the rights of the respective parties.

In order to facilitate the resolution of any question that might remain as to Chandeleur Sound, leave is granted the State of Mississippi and the United States, respectively, without further motion, to file a complaint with this Court setting forth its claim to any undecided portion of Chandeleur Sound. The complaint may be filed within 60 days of the date this opinion is filed. An opposing party shall have 45 days to respond. It is expected that all concerned will cooperate in expediting this remaining aspect of this phase of the litigation.

*It is so ordered.*

JUSTICE MARSHALL and JUSTICE KENNEDY took no part in the consideration or decision of this litigation.